IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE EINSTEIN ACADEMY CHARTER       : <br> SCHOOL, f/k/a THE NATIONAL                      : <br> ORGANIZATION FOR CHILDREN, INC., : <br> d/b/a T.E.A.C.H - THE EINSTEIN              : <br> ACADEMY CHARTER SCHOOL,                  : <br>                                                                         : <br>     Plaintiff,                                           : <br>                                                                         : <br>        v.                                                       : <br> TUTORBOTS, INC.,                                         : <br> MIRIAM ROTHSCHILD a/k/a MIMI         : <br> MANDEL, and HOWARD MANDEL,         : <br>                                                                         : <br>     Defendants.                                     : | CIVIL ACTION No. _____ |

**VERIFIED COMPLAINT IN EQUITY**

Plaintiff The Einstein Academy Charter School, formerly known as The National Organization for Children, Inc., d/b/a The Einstein Academy Charter School ("Einstein"), complaining of defendants, deposes and says as follows:

**INTRODUCTION**

1. Einstein, a public charter school, brings this action against defendants, who formerly provided comprehensive management and development services for Einstein, to enjoin and to recover damages for defendants' infringement and dilution of Einstein's common-law trademarks, unfair trade practices, breach of contract, and conversion.

2. In addition, Einstein seeks an accounting of the profits that defendant Tutorbots, Inc., realized from its contract with Einstein, and the imposition of a trust upon those profits, on the grounds that Tutorbots was contractually or equitably obliged to donate those profits to support and promote public education, but has on information and belief failed to do so.

## PARTIES

3. Plaintiff Einstein is a not-for-profit organization organized under the laws of the Commonwealth of Pennsylvania and having a place of business at 550 West Palmer Street, Morrisville, Pennsylvania. Since March 2001, Einstein has held a charter from the Morrisville School District to conduct business, and has conducted business, as a Pennsylvania charter school. Specifically, Einstein is a "cyber charter school," providing on-line education and instruction via the Internet to students from 55 counties and 345 school districts in the Commonwealth.

4. Defendant Tutorbots, Inc. ("Tutorbots") is a Pennsylvania corporation having a place of business at 10 Shurs Lane, Philadelphia, Pennsylvania. Tutorbots holds itself out as being in the business of, among other things, providing educational management and development services to third-party cyber schools, as well as owning or operating such cyber schools itself.

5. Defendants Rothschild and Mandel are husband and wife and are Pennsylvania citizens, residing at 1225 Montgomery Avenue, Wynnewood, Pennsylvania. At all times pertinent hereto, Rothschild and Mandel acted as officers and directors of Tutorbots, personally participating in or directing the misconduct alleged herein with the intent to bring profit to themselves and harm to Einstein.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338, and 1367. This action arises under the laws of the United States, and specifically under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). The Court may exercise supplemental jurisdiction over the related state law claims.

7. This Court may exercise personal jurisdiction over the defendants because they reside and do business within this district, both generally and with specific regard to the conduct giving rise to this action.

8. Venue in this district is proper pursuant to 28 U.S.C. § 1391, in that the defendants reside in this district, and a substantial part of the events giving rise to this action occurred within this district. Venue is also proper in this district pursuant to the agreement of the parties.

## FACTS

**I.    The Agreement**

9. Einstein was granted its charter as a Pennsylvania public charter school by the Morrisville Public School District ("Morrisville") in March 2001.

10. Einstein uses several unique and famous service marks to identify itself and its services, including THE NATIONAL ORGANIZATION FOR CHILDREN, T.E.A.C.H., THE EINSTEIN ACADEMY CHARTER SCHOOL, and EINSTEIN. By virtue of Einstein's widespread use and promotion of these marks and the popularity and success of its services, the public has come to associate these marks (the "Einstein Marks") exclusively with Einstein and its cyber-educational services, such that the marks serve to identify Einstein as the source

of those services and to vouch for the quality thereof.  The Einstein Marks and the considerable goodwill associated with them are valuable assets of Einstein.

11.     Einstein hired Tutorbots to provide all management and development services necessary to operate the Einstein Academy Charter School in a written Management Agreement ("Agreement") dated August 26, 2001, a true and accurate copy of which is attached hereto as Exhibit 1.

12.     The Agreement provides in pertinent part that:

   a.   Tutorbots would "provide all management and development services necessary to operate the Einstein Academy Charter School," Exhibit 1, § 1.1 and Exhibit A thereto;

   b.   Upon termination of the Agreement for any reason, Tutorbots would "promptly return to T.E.A.C.H. all copies of any data, records of whatever nature or kind, to T.E.A.C.H.," *Id.*, § 2.3;

   c.   Tutorbots would donate all net profits that may derive from [the] agreement to promote and support public education," *Id.*, § 3.2; and

   d.   The Agreement would be governed and construed under Pennsylvania law, and any suit concerning the agreement would be commenced in the state or federal courts sitting in Bucks, Montgomery, or Philadelphia counties.  *Id.*, § 8.1.

13.     Pursuant to the Agreement, defendants assisted Einstein in creating and maintaining an Internet Web site through which the business of the school was conducted. Copies of computer "screen shots" truly and accurately depicting individual Web pages from the Einstein Web site, <www.teachcharterschool.org>, are attached hereto as Exhibit 2.

14.     Einstein's Web site contained both all of the Einstein Marks and a wealth of proprietary and/or confidential material belonging to Einstein, such as its curriculum, coursework, student records, educational philosophy statement, teaching materials and

4

communications, and special features, such as Einstein's *Ask the Expert* series, in which students were given the opportunity to ask questions of guest experts in such topics as archaeology.

## II.     Defendants' Termination of the Agreement

15.     On March 18, 2002, the parties amended the Agreement with Tutorbots so as to eliminate Tutorbots's role in the financial management or business administration of the Einstein Academy Charter School.  A true and accurate copy of this Amendment is attached hereto as Exhibit 3.

16.     On March 28, 2002, Tutorbots abruptly notified Einstein that it was terminating the Agreement because of Einstein's alleged failure to pay money due to Tutorbots, and because Einstein had allegedly entered into a settlement agreement with the Pennsylvania Department of Education that required state oversight of past and future payments made by Einstein to Tutorbots, and that allegedly would "necessarily result in non-payment to Tutorbots by Einstein." A true and accurate copy of correspondence from Tutorbots to Einstein terminating the Agreement is attached hereto as Exhibit 4.

17.     Although the Agreement required Tutorbots to return all property and data belonging to Einstein upon termination of the contract, defendants have failed and refused to do so. On the contrary, defendants have retained copies of the entire Einstein Web site, including all of the curriculum and course materials contained therein, as well as copies of all of Einstein's student records and contact information.

18.     Tutorbots has improperly retained these materials despite the fact that, by letter dated March 30, 2002, counsel for Tutorbots conceded that it was no longer appropriate for

Tutorbots to handle or manage Einstein's student records.  A true and accurate copy of this correspondence is attached hereto at Exhibit 5.

19.	Defendants have not only retained copies of Einstein's curriculum, course materials, and scholastic and student records, but also have published these Einstein materials on several Internet Web sites owned and operated by defendants, bearing the URLs <www.graceacademy.org> ("graceacademy.org"), which promotes defendants' Grace Academy Christian cyber school, and <www.oldtutorbots.com> ("oldtutorbots.com"), which promotes Krams Middle School, another private, Christian cyber school founded or sponsored by defendants.  Copies of "screen shots" that truly and accurately depict various portions of these two Web sites are attached hereto as Exhibits 6 and 7.

20.	As a comparison of Exhibits 2, 6 and 7 instantly reveals, defendants copied and republished all or a significant portion of the Einstein Academy Web site verbatim on their graceacademy.org and oldtutorbots.com Web sites.  In so doing, defendants infringed upon all of the Einstein Marks by reproducing those marks under banners or headers identifying the Einstein Marks and materials as belonging or related to defendants' Grace Academy or Krams Middle School.

21.	The defendants' copying was not limited to the Einstein Marks or to the administrative or logistical pages of the Einstein Web site, but also included substantive content, such as curriculum and course materials belonging to Einstein, its core "Beliefs" or guiding principles, student records and files, *Ask the Expert* series, and even the names and photographs of Einstein's teachers.

22.	Defendants' continued use of these materials is in direct violation of their obligations under the § 2.3 of the Agreement.

23. Furthermore, defendants have upon information and belief breached their obligation under § 3.2 of the Agreement to set aside all net profits that Tutorbots may have derived from the Agreement to promote and support public education. On the contrary, Einstein is informed and believes that defendants made no such donations whatsoever, despite having received some $2.3 million in cash from Einstein over the past nine months, but rather have reserved or expended such profits for their own private use and gain, or for private educational programs such as Grace Academy and Krams Middle School.

## COUNT I
### (For Preliminary and Permanent Injunctive Relief)

24. Einstein incorporates by reference the allegations of paragraphs 1 through 23 of this Complaint as if the same were set forth at length herein.

25. Einstein has suffered, is currently suffering, and will continue to suffer irreparable harm as a result of defendants' infringement of its service marks T.E.A.C.H., THE EINSTEIN ACADEMY CHARTER SCHOOL, THE NATIONAL ORGANIZATION FOR CHILDREN, INC., and EINSTEIN, through the blurring, dilution, and tarnishing of these service marks, the diversion of unknown amounts of sales and of consumer interest from Einstein to defendants, the creation of consumer confusion and uncertainty as to the source and quality of Einstein's services and its affiliation with or sponsorship of or by defendants, and the loss or diminution of the goodwill and reputation associated with the Einstein marks.

26. Einstein is also suffering, and will continue to suffer, irreparable harm from defendants' misappropriation, retention, and misuse of Einstein's trade secrets and other data, materials, records and information.

27. Defendants will suffer no harm as the result of a grant of a preliminary injunction directing defendants to refrain from these unlawful activities, as defendants have no legal right or justification for the acts complained of.

28. There is a substantial likelihood that Einstein will succeed on the merits of its claims against defendants for trademark infringement, breach of contract, misappropriation of trade secrets, and tortious interference with contract.

29. The public interest favors the entry of an injunction against defendants to protect consumers in this district and elsewhere from the confusion, diversion, and deception that has been and is likely to continue being caused by defendants' infringement of Einstein's service marks, and defendants' unlawful retention and misuse of Einstein's trade secrets and proprietary materials.

## COUNT II
**(Willful Violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A))**

30. Einstein incorporates by reference the allegations of paragraphs 1 through 29 of this Complaint as if the same were set forth at length herein.

31. Defendants' use in commerce of Einstein's service marks in connection with the offering of competing educational services is likely to cause confusion or mistake, or to deceive consumers as to the affiliation, connection, or association of defendants with Einstein, or as to the origin, sponsorship, or approval of defendants' services by or from Einstein.

32. Defendants have committed these acts willfully and deliberately, with the intent of deceiving or misleading the public and diverting consumer interest and sales from Einstein to defendants.

33. Defendants' conduct constitutes a willful violation of 15 U.S.C. § 1125(a)(1)(A).

34. As a direct and proximate result of defendants' conduct, Einstein has suffered and will continue to suffer damages from lost sales, the diversion of consumer interest, the blurring, dilution, and tarnishing of its service marks, and injury to its business reputation and to the goodwill associated with its products and materials in an amount yet to be determined, but which exceeds the sum of $75,000, exclusive of interests, costs and fees.

## COUNT III
### (Willful Dilution of Famous Marks in Violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(c))

35. Einstein incorporates by reference the allegations of paragraphs 1 through 34 of this Complaint as if the same were set forth at length herein.

36. Defendants' use of Einstein's famous service marks in commerce has caused and will continue to cause dilution of the distinctive quality of those marks, and loss of their ability to identify Einstein as the source of the goods and services that it offers in connection with those marks.

37. By their conduct as described above, defendants willfully intended to trade on Einstein's reputation, and to cause dilution of Einstein's famous marks.

38. Defendants' conduct constitutes the willful dilution of famous marks in violation of 15 U.S.C. § 1125(c).

39. As a direct and proximate result of defendants' conduct, Einstein has suffered and will continue to suffer damages from lost sales, the diversion of consumer interest, the blurring, dilution, and tarnishing of its service marks, and injury to its business reputation and to the goodwill associated with its products and materials in an amount yet to be determined, but which exceeds the sum of $75,000, exclusive of interests, costs and fees.

## COUNT IV
**(Pennsylvania Unfair Trade Practices)**

40. Einstein incorporates by reference the allegations of paragraphs 1 through 39 of this Complaint as if the same were set forth at length herein.

41. By their conduct as described above, and specifically and without limitation by attempting to "pass off" the educational services being offered by defendants' Grace Academy and Krams Middle School as being that of, affiliated with, or sponsored by Einstein, and thereby benefit from the fame and goodwill associated with Einstein and its service marks, defendants have engaged in unfair trade practices under Pennsylvania common law.

42. As a direct and proximate result of defendants' conduct, Einstein has suffered and will continue to suffer damages from lost sales, the diversion of consumer interest, the blurring, dilution, and tarnishing of its service marks, and injury to its business reputation and to the goodwill associated with its products and materials in an amount yet to be determined, but which exceeds the sum of $75,000, exclusive of interests, costs and fees.

## COUNT V
**(Misappropriation of Trade Secrets)**

43. Einstein incorporates by reference the allegations of paragraphs 1 through 42 of this Complaint as if the same were set forth at length herein.

44. Through considerable effort and expense, Einstein has compiled or created proprietary, confidential, and valuable information and materials, such as its curriculum and course content, which Einstein uses in its business and which gives Einstein an advantage over competitors who do not know of or have access to such materials. Einstein has specifically identified these materials as confidential and has taken measures, such as the use of computer

10

passwords and restricted areas, to prevent the materials from being published or otherwise becoming a matter of general public knowledge, and to further prevent them from becoming available to persons other than those selected by Einstein to have access thereto for limited purposes. Accordingly, Einstein's curriculum and course content constitutes a trade secret under Pennsylvania law.

45. Defendants have deliberately and flagrantly misappropriated Einstein's curriculum and course content, and misused those trade secrets for their own actual or intended gain by, among other things, publishing Einstein's curriculum and content under the banner of its Grace Academy and Krams Middle School in order to bolster the credibility and attractiveness of those schools at a time when defendants were unable to provide substantive original educational materials of their own.

46. As a direct and proximate result of defendants' misappropriation of Einstein's trade secrets, Einstein has been damaged in an amount yet to be determined, but which exceeds the sum of $75,000, exclusive of interests, costs, and fees.

## COUNT VI
**(Breach of Contract)**

47. Einstein incorporates by reference the allegations of paragraphs 1 through 46 of this Complaint as if the same were set forth at length herein.

48. The Agreement constitutes a valid and enforceable contract between Einstein and defendants.

49. Pursuant to the Agreement, defendants were obligated to:

    a. promptly return to Einstein all copies of any data, records of whatever nature or kind," § 2.3; and

      b.    donate all net profits that Tutorbots might derive from Agreement to promote and support public education," § 3.2.

50. Defendants have breached and are continuing to breach their obligations under §§ 2.3 and 3.2 of the Agreement.

51. As a direct and proximate result of defendants' several breaches of contract, Einstein has been damaged in an amount yet to be determined, but which exceeds the sum of $75,000, exclusive of interests, costs, and fees.

### COUNT VII
### (Conversion)

52. Einstein incorporates by reference the allegations of paragraphs 1 through 51 of this Complaint as if the same were set forth at length herein.

53. Defendants have withheld from Einstein, and upon information and belief do not intend to return to Einstein, the data, information, records, and materials belonging to Einstein described above.

54. Einstein gave possession of these materials to defendants only for the purpose of allowing defendants to render management and development services for Einstein.

55. Defendants have exercised and are continuing to exercise unlawful control over these materials, and have refused and continue to refuse to return these materials to Einstein.

56. Defendants have no right, title, or equitable claim to the ownership of these materials.

57. On information and belief, defendants intend to permanently deprive Einstein of its right to exclusive ownership and control of these materials.

58. Defendants' actions as alleged herein were and continue to be willful, wanton, deliberate, and malicious, and were taken with the purpose and intent of harming Einstein in its business and of profiting themselves thereby by converting the materials to their own use.

59. As a direct and proximate result of defendants' conversion of its materials, Einstein has been damaged in an amount yet to be determined, but which exceeds the sum of $75,000, exclusive of interests, costs, and fees.

## COUNT VIII
### (Unjust Enrichment)

60. Einstein incorporates by reference the allegations of paragraphs 1 through 59 of this Complaint as if the same were set forth at length herein.

61. Defendants have unjustly enriched themselves by, among other things, misappropriating Einstein's valuable trade secrets, retaining and making commercial use of Einstein's data, materials and information, and failing to donate the net profits that Tutorbots realized under the Agreement to promote and support public education.

62. Under the circumstances, it would be unjust and inequitable to allow defendants to retain these trade secrets, materials, and funds without requiring them to pay Einstein the reasonable value thereof for its own use, or for donation to the appropriate public education organizations or entities.

63. Accordingly, Einstein is entitled to an order directing defendants to pay to Einstein the reasonable value of these items, in an amount not yet determined but which is in excess of $75,000, exclusive of interests, costs, and fees.

## COUNT IX
**(For An Accounting)**

64. Einstein incorporates by reference the allegations of paragraphs 1 through 63 of this Complaint as if the same were set forth at length herein.

65. By virtue of the authority and power granted to defendants and the duties and responsibilities imposed upon them under the Agreement, as well as Einstein's extensive reliance upon defendants to properly manage and develop the educational services offered by the Einstein Academy Charter School, a confidential and fiduciary relationship arose between defendants and Einstein.

66. Among other things, defendants had a fiduciary duty to Einstein to set aside and donate such profits as Tutorbots might realize under the Agreement for the promotion and support of public education.

67. On information and belief, defendants abused their position and violated their fiduciary duty by failing to donate Tutorbots's profits under the agreement for the promotion and support of public education, and by failing to disclose this breach of their fiduciary duty to Einstein.

68. As indicated in part by the necessity of retaining a forensic accountant to investigate and determine the validity of Tutorbots's invoices to Einstein and Einstein's payments to Tutorbots and the use to which those funds were put, the accounts of Tutorbots are neither simple nor readily available to Einstein, but rather are complex and largely or entirely inaccessible.

69. Accordingly, Einstein is entitled to an order requiring defendants to make an accounting of any and all net profits realized from Tutorbots's provision of services to Einstein

under the Agreement, so that those profits may be determined, set aside, and donated to support and promote public education.

## COUNT X
### (Express or Resulting Trust)

70. Einstein incorporates by reference the allegations of paragraphs 1 through 69 of this Complaint as if the same were set forth at length herein.

71. The facts as alleged herein demonstrate a clear and express intent between the parties that the net profit that defendants realized from payments made to Tutorbots by Einstein under the Agreement would be held in trust by defendants for the benefit of public educational programs and organizations.

72. Upon information and belief, defendants violated and are continuing to violate their duties as trustees of these funds for the public good, and have instead spent and are continuing to spend the net profits of their relationship with Einstein on themselves or on private educational programs such as Grace Academy.

## COUNT XI
### (Constructive Trust)

73. Einstein incorporates by reference the allegations of paragraphs 1 through 72 of this Complaint as if the same were set forth at length herein.

74. Defendants were subject to a duty to preserve and to convey the net profits of Tutorbots to third parties for the promotion and support of public education.

75. Einstein conveyed millions of dollars to defendants in reliance upon defendants' duty and promise to hold that property in trust for the promotion and support of public education.

76. Defendants abused the parties' fiduciary and confidential relationship, and misrepresented their actions to Einstein by not only failing to donate the net profits Tutorbots realized from the Agreement to promote and support public education, but also by failing to disclose that fact to Einstein.

77. Defendants would be unjustly enriched if they were permitted to retain the funds given to them by Einstein to hold in trust for the benefit of public education.

WHEREFORE, plaintiff respectfully prays the Court for a judgment in its favor and against defendants on all Counts set forth above, together with the following specific relief:

1. An order preliminarily enjoining defendants from:

    a. infringing or making other unauthorized use of Einstein's service marks and identifying symbols, including but not limited to T.E.A.C.H., THE EINSTEIN ACADEMY CHARTER SCHOOL, THE NATIONAL ORGANIZATION FOR CHILDREN, and EINSTEIN; and

    b. retaining or making use of Einstein's trade secrets and other data, information, materials or records, all pursuant to Count I of this Complaint;

2. Damages, including compensatory damages and treble damages, for defendants' willful infringement of the Einstein Marks pursuant to Count II of this Complaint;

3. Damages, including compensatory and exemplary damages, for defendants' willful dilution of the Einstein Marks pursuant to Count III of this Complaint;

4. Damages, including compensatory and exemplary damages, for defendants' unfair trade practices pursuant to Count IV of this Complaint;

5.      Damages, including compensatory and exemplary damages, for defendants' willful misappropriation and misuse of Einstein's trade secrets pursuant to Count V of this Complaint;

6.      Compensatory damages for defendants' breach of § 2.3 of the Agreement, and an order directing defendants to specifically perform their duties under § 3.2 of the Agreement by donating all net profits that Tutorbots realized from the Agreement to the support and promotion of public education, all pursuant to Count VI of this Complaint;

7.      Damages, including compensatory and exemplary damages, for defendants' willful conversion of Einstein's materials and information to their own use pursuant to Count VII of this Complaint;

8.      Damages, in the form of the reasonable value of:

      a.      the materials and funds unjustly retained by defendants from Einstein; and

      b.      in the alternative to the relief requested in Count VII for the specific performance of defendants' duties under § 3.2 of the Agreement, defendants' net profits under the Agreement, this latter amount to be held in trust by Einstein for donation to public educational programs or organizations, all pursuant to Count VIII of this Complaint;

9.      An accounting of defendants' net profits from payments to Tutorbots's under the Agreement pursuant to Count IX of this Complaint;

10.      The imposition of an express, resulting, or constructive trust in the net profits that defendants realized under the Agreement, and an order directing defendants to set aside and preserve those funds pending the outcome of this litigation pursuant to Counts X and XI of this Complaint;

11. An award of pre- and post-judgment interest upon all damages allowed to Einstein at the maximum legal rate, together with Einstein's costs and reasonable attorney fees as allowed by law; and

12. For such other and further relief as the Court may deem just and proper.


May 14, 2002

                        _____
Howard D. Scher
Francis X. Taney, Jr.
Pennsylvania ID Nos. 03673 and 76590
BUCHANAN INGERSOLL, PC
1835 Market Street, 14th Floor
Philadelphia, PA 19103
Telephone: (215) 665-6700

Attorneys for Plaintiff

**VERIFICATION**

I, Murray W. Popkave, hereby verify that I am the Chairman of the Board of Trustees of The Einstein Academy Charter School, formerly known as The National Organization for Children d/b/a The Einstein Academy Charter School, Inc., the plaintiff in this action; that I am authorized to make this verification on its behalf, that I have read the facts and information set forth in the foregoing Complaint and that the same or true to the best of my knowledge, information and belief, and where alleged upon information and belief, that I believe them to be true.  This Verification is made subject to the penalties of 18 Pa.C.S.A. § 4904 relating to unsworn falsification to authorities.

_____
James Hanak

Dated:  May 13, 2002