## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE EINSTEIN ACADEMY CHARTER SCHOOL, f/k/a THE NATIONAL ORGANIZATION FOR CHILDREN, INC., d/b/a T.E.A.C.H. - THE EINSTEIN ACADEMY CHARTER SCHOOL, | : : : : : | CIVIL ACTION No. _____ |
| Plaintiff, | : : | |
| v. | : : | |
| TUTORBOTS, INC.; MIRIAM ROTHSCHILD, a/k/a MIMI MANDEL, and HOWARD MANDEL, | : : : : | |
| Defendants. | : | |

## PRELIMINARY INJUNCTION ORDER

AND NOW, on this ____ day of _____, 2002, upon consideration of the motion by plaintiff Einstein Academy Charter School, f/k/a The National Organization for Children, Inc., d/b/a T.E.A.C.H. - The Einstein Academy Charter School ("Einstein"), for a preliminary injunction, and having determined that plaintiff has a likelihood of success on the merits of its claims against defendants for trademark infringement, breach of contract, and misappropriation of trade secrets, and that plaintiff is suffering and will continue to suffer immediate and irreparable injury as a result of defendants' conduct and the resultant loss of valuable business, goodwill, reputation and standing in the industry, which harm cannot be adequately compensated by money damages alone, it is hereby ORDERED, ADJUDGED and DECREED, that defendants, their agents, servants, employers, employees, consultants, attorneys, successors and assigns and all other persons or entities within their control or supervision, and all other persons or entities acting in

concert with them or on their behalves or participating with them, shall be ENJOINED and

ORDERED, until further Order of the Court, as follows:

1.      Defendants shall not make commercial use of the marks THE EINSTEIN

ACADEMY CHARTER SCHOOL, T.E.A.C.H., THE NATIONAL ORGANIZATION FOR

CHILDREN, INC., or EINSTEIN, (the "Einstein Marks") or use or display those marks in

connection with defendants' business or scholastic activity in a manner tending to create confusion

among the public as to the association, affiliation, or sponsorship of, with or between plaintiff and

defendants.  Any future fair use or noncommercial use by defendants of any of the Einstein Marks

shall be accompanied by a prominent and adjacent disclaimer advising the public that defendants

are not associated or affiliated with or sponsored by Einstein in any way.  For a period of three

months from the date of this Order, defendants shall affix a disclaimer advising the public that any

prior use by defendants of any of the Einstein Marks was without Einstein's consent and did not

reflect a previous association or affiliation with or sponsorship by Einstein in any way.

2.      Defendants shall not copy, publish, or make use of any records or data belonging

to Einstein, including without limitation its course curriculum created or student and scholastic

records, and shall promptly immediately return all copies of such data to Einstein.  Counsel for

defendants shall be permitted to retain one copy of these materials for use solely in the defense

of the claims against defendants.

3.      This Order shall remain in full force and effect until such time as the hearing has

been held on Plaintiff's request for permanent injunctive relief and the Court has ruled thereon.

4.     Einstein is hereby directed to file a bond with the Court in the amount of $ _____.

_____

U.S.D.J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THE EINSTEIN ACADEMY CHARTER SCHOOL, f/k/a THE NATIONAL ORGANIZATION FOR CHILDREN, INC., d/b/a T.E.A.C.H. - THE EINSTEIN ACADEMY CHARTER SCHOOL, | : CIVIL ACTION No. _____ : : : : |
| Plaintiff, | : : |
| v. | : : |
| TUTORBOTS, INC.; MIRIAM ROTHSCHILD, a/k/a MIMI MANDEL, and HOWARD MANDEL, | : : : : |
| Defendants. | : |

**PLAINTIFF'S MOTION FOR**
**PRELIMINARY INJUNCTION**

Plaintiff Einstein Academy Charter School, formerly known as The National Organization for Children, Inc., d/b/a T.E.A.C.H. - The Einstein Academy Charter School ("Einstein"), hereby moves the Court, pursuant to Federal Rule of Civil Procedure 65, for a preliminary injunction prohibiting defendants Tutorbots, Inc., Miriam Rothschild a/k/a Mimi Mandel ("Rothschild") and Howard Mandel from infringing upon Einstein's trademarks, continuing to breach their contractual obligation to return all of Einstein's records or data to Einstein, or misappropriating and misusing Einstein's trade secrets and other confidential materials, until a final hearing is held on plaintiff's request for permanent injunctive relief.

In support of this motion, Einstein respectfully refers the Court to the memorandum of law attached hereto, as well as the Verified Complaint in Equity filed contemporaneously with this motion, the contents of which are incorporated herein by reference.

WHEREFORE, plaintiff Einstein respectfully requests that the Court grant its motion for preliminary injunctive relief as set forth in the attached form of order, and requiring Einstein to post the minimum bond that, in the judgment of the Court, is consistent with the adequate security of defendants' protectable interests.

Respectfully submitted,

Dated: May ___, 2002

_____
Howard D. Scher
Francis X. Taney, Jr.
PA Attorney I.D. Nos. 03673 and 76590 814
BUCHANAN INGERSOLL, P.C.
Eleven Penn Center
1835 Market Street - 14th Floor
Philadelphia, PA  19103
Telephone:  (215) 665-8700

Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| THE EINSTEIN ACADEMY CHARTER | : | CIVIL ACTION No. _____ |
| SCHOOL, f/k/a THE NATIONAL | : | |
| ORGANIZATION FOR CHILDREN, INC., | : | |
| d/b/a T.E.A.C.H. - THE EINSTEIN | : | |
| ACADEMY CHARTER SCHOOL, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| TUTORBOTS, INC.; MIRIAM | : | |
| ROTHSCHILD, a/k/a MIMI MANDEL, | : | |
| and HOWARD MANDEL, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

Plaintiff Einstein Academy Charter School, formerly known as The National Organization

for Children, Inc., d/b/a T.E.A.C.H. - The Einstein Academy Charter School ("Einstein"),

respectfully submits this memorandum of law in support of its motion for a preliminary

injunction prohibiting defendants Tutorbots, Inc., Miriam Rothschild a/k/a Mimi Mandel

("Rothschild") and Howard Mandel from infringing upon Einstein's trademarks, continuing to

breach its contractual obligation to return all records and data belonging to Einstein, or

misappropriating and misusing Einstein's trade secrets and other confidential materials until a

final hearing is held on plaintiff's request for permanent injunctive relief.

**PROCEDURAL HISTORY AND FACTS**

Contemporaneously with this motion for a preliminary injunction, Einstein has filed a

Verified Complaint in Equity ("Complaint"), with attached exhibits, setting forth the factual

basis for its claims against defendants for, among other things, trademark infringement and dilution under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125, and misappropriation of trade secrets under Pennsylvania law.  Einstein incorporates the allegations of and exhibits to the Complaint herein by reference, and respectfully refers the Court to the Complaint for a full recitation of the facts.

In brief, the Complaint alleges as follows.  Einstein operates a charter school, The Einstein Academy Charter School, chartered by the Morrisville School District under the Pennsylvania Charter School Law, 17 P.S. §1701A *et seq.*  From August 2001 through March, 2002, defendant Tutorbots and defendants Rothschild and Mandel, its primary actors and agents, performed a broad range of educational development and management services for Einstein pursuant to a written Management Contract ("Agreement," copy attached to the Complaint as Exhibit 1).  The Agreement provided in pertinent part that, upon its termination, Tutorbots would promptly return to Einstein "any data [or] records of whatever kind or nature." *Id.*, § 2.3.

During the course of the parties' contractual relationship, defendants gained access to all or virtually all of Einstein's proprietary and confidential information, including its entire store of course curriculum and materials and its student and scholastic records.  In addition, defendants had access to Einstein's entire Web site, which contained these materials, as well as multiple copies of Einstein's several trademarks:  THE EINSTEIN ACADEMY CHARTER SCHOOL, THE NATIONAL ORGANIZATION FOR CHILDREN, INC., T.E.A.C.H., and EINSTEIN (collectively, the "Einstein Marks").

Defendants terminated the Agreement on March 28, 2002, but have since failed to return Einstein's course curriculum and student and scholastic records to it.  On the contrary, defendants

2

have retained one or more copies of Einstein's entire Web site, and have caused copies of the Web site to be reproduced on at least two Web sites owned by defendants, and which they have used to promote their own competing "cyber schools," Grace Academy and Krams Middle School.  As vividly demonstrated by Exhibits 2, 6 and 7 to the Complaint, defendants pirated and reproduced the Einstein Web site verbatim and in its entirety, including Einstein's trade secret and other confidential materials and the Einstein Marks, but under banners or headers identifying those Marks and materials as belonging to or affiliated with defendants' Grace Academy and Krams Middle School.

Einstein now seeks to halt the irreparable harm that it has already suffered, and avoid any future such harm, by asking the Court to preliminarily enjoin defendants from further infringing upon the Einstein Marks, wrongfully retaining Einstein's records and data, and misusing Einstein's trade secrets, and ordering defendants to return all copies of the Einstein course curriculum and student and scholastic information to Einstein, save one copy reserved for use by defendants' counsel in defense of the claims raised in the Complaint.

## **ARGUMENT**

### I.    **The Preliminary Injunction Standard**

In considering a request for injunctive relief, the Court must weigh four factors:  1) the likelihood that the applicant will prevail on the merits of the claim on which it seeks injunctive relief at the final hearing on that claim; 2) the extent to which the plaintiff is being irreparably harmed by the conduct complained of; 3) the extent to which the defendants will be irreparably harmed if the injunction sought is granted; and 4) the public interest.  *Opticians Association of*

*America v. Independent Opticians of America,* 920 F.2d 187, 191-92 (3d Cir. 1990) (quoting *Bill Blass, Ltd.v. Saz Corp.*, 751 F.2d 152, 154 (3d Cir. 1984).  Application of this four-factor test to the facts presented by this motion demonstrates Einstein's clear entitlement to injunctive relief on both its claims for trademark infringement and misappropriation of trade secrets.

**II.    Einstein is Entitled to Preliminary Injunctive Relief on its Claim for Trademark Infringement**

The Third Circuit and this Court have consistently upheld a plaintiff's right to a preliminary injunction where, as here, the defendant is making unauthorized use of plaintiff's identical trademark to advertise and promote a competing business or enterprise.[1]  Because defendants have copied not only Einstein's exact marks, but also their precise form and manner of presentation, and have used those marks to promote defendants' competing, private cyber schools, Einstein is entitled to an injunction barring all such infringement.

**A.    Einstein is Likely to Succeed on the Merits**

In order to prevail on its trademark infringement claim, Einstein must prove that its marks are valid and legally protectable; that Einstein owns the marks; and that defendants' use of the marks to identify defendants' goods or services is likely to create confusion concerning the origin of the goods or services.  *Opticians Association of America*, 920 F.2d at 192.  There is no dispute as to the first two prongs of this three-factor test; that is, Einstein is the valid owner of the Einstein Marks, having used them in the planning, proposal, development and operation of The Einstein Academy

---

[1] Indeed, the propriety of injunctive relief in cases of trademark infringement under 15 U.S.C. § 1125 is so well-recognized that it is the subject of its own section of the Lanham Act, 15 U.S.C. § 1116, which expressly provides that "[t]he several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as

4

Charter School in interstate commerce for over a year, and having enrolled and educated thousands of students within the Commonwealth of Pennsylvania under those marks.

Neither can there be any dispute as to the likelihood of confusion.  Both the Third Circuit and this Court have repeatedly held that there is an inevitable likelihood of confusion wherever two unrelated but competing entities use the identical mark.  *Pappan Enterprises, Inc. v. Hardee's Food Systems, Inc.*, 143 F.3d 800, 804 (3d Cir. 1998) ("This court has held that where the identical mark is used concurrently by unrelated entities, the likelihood of confusion is inevitable) (citing *Opticians of America*, 920 F.2d at 195 and *United States Jaycees v. Philadelphia Jaycees*, 639 F.2d 134, 137 (3d. Cir. 1981) (same)); *S&R Corp. v. Jiffy Lube International, Inc.*, 968 F.2d 371, 375 (3d Cir. 1992) ("there is a great likelihood of confusion where an infringer uses the exact trademark as the plaintiff"); *Basic Fun, Inc. v. X-Concepts, LLC*, 157 F.Supp.2d 449, 456 (E.D.Pa. 2001) (finding likelihood of confusion and granting preliminary injunction where defendant copied plaintiff's name and logo on products that competed with plaintiff's line of miniature skateboards); *see also* 2 J. McCarthy, *Trademarks and Unfair Competition* §23:3 (2nd ed.) ("Cases where a defendant uses an identical mark on competitive goods hardly ever find their way into the appellate reports.  Such cases are 'open and shut' and do not involve protracted litigation to dtermine liability for trademark infringement").

Here, defendants have caused exact replicas of the Einstein Marks to appear on Web sites promoting defendants' competing cyber schools, Grace Academy and Krams Middle School. *Compare* Complaint, Ex. 2 *with* Complaint, Exs. 6 and 7.  The Einstein Marks appear repeatedly throughout the defendants' Web sites, from the headings through the text, and even down to the

the court may deem reasonable… to prevent a violation of section 1125(a) of this title."

legal notices at the foot and ending of the Web sites.  *Id.*  Thus, there can be no doubt as to the

likelihood of confusion among the children and adults who may access this information and

mistakenly -- but quite reasonably -- assume that defendants' schools are part of, associated with, or

sponsored by Einstein.

### B.    Einstein Has Been and Is Being Irreparably Harmed

"Trademark infringement amounts to irreparable injury as a matter of law." *S&R Corp.*, 968

F.2d at 378.  "Grounds for irreparable injury include loss of control of reputation, loss of trade, and

loss of goodwill."  *Opiticians of America*, 920 F.2d at 195.  Simply put, Einstein has been and will

be harmed by defendants' use of its mark on Web sites promoting defendants' schools because

Einstein can no longer control the quality of the educational services that are offered in connection

with its name.  It is well established that this injury alone, even without proof of separate injury to

reputation and lost trade, is sufficient to support injunctive relief.  *See Opticians of America*, 920

F.2d at 196 (irreparable injury follows "as a matter of course" from showing of likelihood of

confusion due loss of control over reputation and potential loss of goodwill; holding that, where

defendants' conduct creates a likelihood of confusion, the "inescapable conclusion" is that there is

also irreparable injury); *Pappan Enerprises*, 143 F.3d at 805 (same); *Jiffy Lube*, 968 F.2d at 378

(plaintiff who shows likelihood of confusion "has *a fortiori* alleged irreparable harm"); *Basic Fun*,

157 F.Supp.2d at 457 ("to prove irreparable injury, the movant must only make a prima facie

showing of… trademark infringement"); *Kraft Genereal Foods v. BC-USA*, 840 F.Supp. 344, 351

(E.D.Pa. 1993) ("[t]he key in finding irreparable injury [in trademark actions] is the lack of control

over trade reputation").

Neither is it necessary that Einstein prove that the infringing conduct is continuing or will continue in the future in order to justify an injunction.  "A movant has no burden to prove likely repetition of the infringement to obtain an injunction."  *Basic Fun*, 157 F.Supp.2d at 457 (granting injunction even where defendant claimed that it had already stopped the infringing conduct; noting that "if the defendants sincerely intend not to infringe, the injunction harms them little; if they do, it gives the movant substantial protection of its trademark") (quoting *Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135-36 (9th Cir. 1986) and *Hard Rock Café Licensing Corp. v. Conscession Services, Inc.*, 955 F.2d 1143, 1147 (7th Cir. 1992)).

Because Einstein has shown that defendants' conduct has created a strong, indeed "inevitable" likelihood of confusion, the "inescapable conclusion" is that it has also satisfied its burden of proving irreparable harm.

### C.    An Injunction Will Not Harm Defendants

A defendant whose own infringing conduct calls down an injunction will not be heard to complain about the harm that the injunction may do to it.  *See Kraft General Foods*, 840 F.Supp. at 351 (in granting preliminary injunction for holder of the mark PHILADELPHIA cream cheese against defendants' use of the confusingly similar mark PENNSYLVANIA cream cheese, noting that "a defendant can hardly claim a harm it brought upon itself… [defendant] can hardly protest that it will be irreparably harmed if it must stop using the Pennsylvania name and packaging"); *Opticians of America*, 920 F.2d at 197 (defendant "can hardly claim to have been harmed, since it brought any and all difficulties occasioned by the issuance of an injunction upon itself"); *S&R Corp.*, 968 F.2d at 378 (same).

7

These precedents fit the facts here precisely. Defendants knowingly and willfully copied the Einstein Marks on their own Web sites, and placed those marks beneath defendants' own marks for their Grace Academy and Krams Middle School. Whether this was done out of convenience, malice, haste, or an intent to deceive the public is irrelevant to the unavoidable conclusion that defendant had no right to infringe upon Einstein's marks in the first instance, and so will not suffer any injury, much less irreparable injury, from being required to remove those marks from its Web pages and other commercial publications. Thus, the third of the four injunctive-relief factors also falls heavily in plaintiff's favor.

### D.    The Public Interest Favors An Injunction

"In a trademark case, the public interest is 'most often a synonym for the public's right not to be deceived or confused.' Where a likelihood of confusion arises out of the concurrent use of [identical] trademarks, the infringer's use damages the public interest." *S&R Corp.*, 968 F.2d at 379 (quoting *Opticians of America*, 920 F.2d at 197); *Pappan Enterprises*, 143 F.3d at 807 (upholding district court's ruling that a finding of likelihood of confusion "mandated" a finding that continued confusions would harm the public interest); *Kraft Foods*, 840 F.Supp at 351 (where court finds a likelihood of confusion, "it follows that the public interest would be damaged if the confusing use continues").

Because the likelihood of confusion here is clear, it is equally clear that the public interest favors an injunction against a continuation of that confusion.

Accordingly, and having fully satisfied its four-part burden of proof, Einstein is entitled to a preliminary injunction barring defendants from any further commercial use of the Einstein Marks, or any confusingly similar marks.

8

**III.    Einstein is Entitled to Preliminary Injunctive Relief on its Claims for**
**Breach of Contract and Misappropriation of Trade Secrets**

As with trademark infringement, numerous decisions of the Third Circuit and this Court affirm a parties' right to enjoin a competitor from misappropriating the plaintiff's confidential materials or trade secrets and using those secrets and materials against it.  Although Einstein believes and stands ready to prove that the materials that defendants have stolen and used on their own Grace Academy and Krams Middle School Web sites qualify as trade secrets under Pennsylvania law, the granting of an injunction against defendants' continued misuse of those materials does not hinge upon such a finding, as Einstein has a separate and independent ground for injunctive relief based upon the defendants' willful breach of § 2.3 of the Agreement.

**A.    Einstein is Likely to Succeed on its Claims for Breach of Contract and**
**Misappropriation of Trade Secrets**

Einstein is clearly likely to succeed on the merits of its claim that defendants have breached their obligation to "promptly" return all "data" or "records of whatever nature or kind" to Einstein upon the termination of the Agreement.  The language of the Agreement is plain, as is defendants' continued refusal to return the Einstein "data" and "records" contained in its Web site.  *See* Complaint, Ex. 2, 6, 7.  These records contain Einstein's entire course curriculum, from course descriptions to correspondence between teachers and special educational events such as Einstein's *Ask the Expert* series, even down to photographs of Einstein's teachers themselves, who are wrongfully depicted as being on the staff of Grace Academy and/or Krams Middle School.  Thus, it is clear that defendants have not only breached their contractual obligation to promptly return these materials to Einstein, but also have misused them to create the instant

9

illusion that Grace Academy and Krams Middle School have full curricula, students and staff, when in fact they have little or no such assets. *See Ecolaire, Inc. v. Crissman*, 542 F.Supp. 196, 205 (E.D.Pa. 1982) (court of equity will enforce contractual provision against the unlicensed use or disclosure of confidential information; collecting cases).

In addition, some or all of the materials that defendants misappropriated from Einstein also constitute trade secrets under Pennsylvania law. For example, and without attempting to go into detail concerning every aspect of that broad variety of materials, it is clear that Einstein's scholastic and student records constitute confidential information akin to customer lists and records used by commercial ventures. Although Einstein is a publicly-chartered, not-for-profit institution, the same cannot be said for defendants' Grace Academy and Krams Middle School. At the hearing on this motion, Einstein expects to present evidence showing that defendants have misused their access to Einstein's student and scholastic records to create the impression that Grace Academy and Krams Middle Schools are thriving and well-attended institutions, when in fact they are empty husks, temporarily and misleadingly stuffed with Einstein's stolen curriculum and student data. Further, defendants have used Eintein's student records for a commercial purpose by sending repeated broadcast emails to Einstein's students and their parents, urging them to disenroll from Einstein and to instead enroll on Grace Academy. This misconduct clearly warrants injunctive relief. *See BIEC International, Inc. v. Global Steel Services, Ltd.*, 791 F.Supp. 489, 544-45 (E.D.Pa. 1992) ("under Pennsylvania law, confidential customer lists have long been held to be trade secrets;" enjoining use of plaintiff's mailing lists by former employee to solicit plaintiff's customers) (collecting cases); *Ecolaire,* 542 F.Supp. at 205 (enjoining competitor's use of plaintiff's customer lists; noting that lists qualified as trade secrets

10

because they were of value and, "except by the use of improper means, there would be difficulty in acquiring the information" on those lists); *General Business Services, Inc. v. Rouse*, 495 F.Supp. 526, 531-32 (E.D.Pa. 1980) (enjoining former agent's use of misappropriation and use of plaintiff's franchisee list; noting the general rule that customer lists constitute trade secrets).

Further, the scholastic records and student information that defendants have misappropriated is protected from disclosure under federal law.  The Federal Educational Rights and Privacy Act (FERPA), General Education Provisions Act § 438, as amended, 20 U.S.C. §§1232(g), as applicable to Einstein through its charter with the Commonwealth of Pennsylvania, prohibits the disclosure of educational records.  Although FERPA creates no private cause of action, courts around the country and in this Circuit have cited FERPA to enjoin the disclosure of educational records, either at the request of the Attorney General or as part of private suits under 42 U.S.C. § 1983.  *See*, *e.g.*, *United States v. The Miami University*, 91 F.Supp.2d 1132, 1138 (S.D.Ohio 2000) (enjoining release of student disciplinary records); *Krebs v. Rutgers*, 797 F.Supp. 1246, 1260 (D.N.J. 1992) (enjoining university from distributing class rosters listing students by name and full social security number under).  Where these courts have found a likelihood of success on the merits based upon the release of just a portion of a student's records or identifying information, defendants here have copied and are misusing Einstein's entire body of scholastic and student records.

Thus, Einstein has demonstrated a substantial likelihood of success on the merits of both its breach of contract claim and its misappropriation of trade secrets claim as they pertain to defendants' theft and misuse of Einstein's course curriculum and student and scholastic information.

11

**B.      Defendants' Misconduct is Causing Einstein Irreparable Harm**

Whether viewed as a breach of contract, a theft of trade secrets, or a violation of FERPA, defendants' retention and misuse of Einstein's scholastic materials has caused and continues to cause irreparable harm.  By effectively taking the "guts" of the Einstein Web site, from Einstein's statement of "Beliefs" down to the photographs of its teachers, defendants have hijacked not only Einstein's name, but also the very core of the educational services Einstein provides.  Einstein has therefore not only lost control of the reputation and goodwill associated with those services, but of the very services themselves.  This loss of control constitutes irreparable harm.  *See Ecolaire*, 542 F.Supp. at 209 (finding that plaintiff would be irreparably injured by defendants' breach of contractual restriction against use of plaintiff's customer lists and other confidential information); *BIEC International*, 791 F.Supp. at 549-550 (finding plaintiff would be irreparably harmed by misappropriation of its mailing and customer lists and other confidential business information); *General Business Services*, 495 F.Supp.at 532 (enjoining defendant's use of plaintiff's franchisee lists); *see also Krebs*, 797 F.Supp. at 1259 (finding that University's disclosure of student social security numbers constituted irreparable harm; noting that violations of protected privacy interests present "serious and irreparable" injury) (citing *IBEW No. 5 v. U.S. Dept. of HUD*, 825 F.2d 87, 89 (3d Cir. 1988)).

**C.      The Injunction Sought Will Not Harm Defendants**

Nothing in the order that Einstein seeks will cause any harm to defendants, as defendants have no right to engage in the conduct that Einstein seeks to enjoin.  By the black letter of the contract, defendants have agreed to return all "data and records, of whatever kind or nature" to

Einstein upon the termination of the Agreement.  Having willingly agreed to give all such

material back to Einstein, defendants cannot claim any harm in being held to their agreement.

Neither can defendants claim any right to use, or harm from being barred from using, Einstein's

course curriculum and confidential scholastic information.  Indeed, as shown in Exhibit 5 to the

Complaint, Tutorbots has already conceded that it no longer has the right to handle Einstein's

student records or transcripts of any kind under FERPA.

Einstein does not seek to enjoin defendants from operating competing cyber schools, but

*does* seek to enjoin defendants from doing so with pirated copies of Einstein's curriculum and

scholastic materials.  Because the injunction sought will leave defendants free to engage in

legitimate competition, and enjoin only the illegitimate and illegal competition in which they

have chosen to engage, defendants cannot claim to suffer any harm thereby.  *See BIEC*

*International, Inc.*, 791 F.Supp. at 550-51 (enjoining competitor from using plaintiff's customer

lists and trade secrets to engage in specialty division of steel markte, even where injunction

would cause defendant substantial harm by effectively precluding defendant from participating

in that market).

### D.    <u>The Public Interest Favors the Injunction Sought</u>

It need hardly be said the the public interest favors an order precluding defendants from

using Einstein's course curriculum and student information to mislead potential students into

believing that Grace Academy and Krams Middle School are full-fledged and operational cyber

schools, when in fact they are little more than shells hastily thrown together by defendants after

they terminated the Agreement with Einstein.  There can be no more forceful statement of the

public interest than the existence and express purpose of FERPA, which is to protect the privacy

of confidential educational records from disclosure and improper exploitation.  *See, e.g.,  Krebs*, 797 F.Supp. at 1260 (finding public interest weighed in favor of enjoining university from disclosing student social security numbers).  By improperly using Einstein's scholastic records as a potential customer list, defendants have violated the privacy interests protected by FERPA, and harmed the public purpose embodied in that statute.

Accordingly, whether viewed as a breach of contract or a misappropriation of trade secrets, defendants' wrongful act in copying and re-publishing Einstein's course curriculum, and retaining and misusing its scholastic records, must be enjoined.

## **CONCLUSION**

Einstein's motion for a preliminary injunction seeks to prevent ongoing and irreparable harm from the direct copying of its trademarks, the breach of its contractual right to control and retain all copies of its educational materials and student records, and defendant's unconscionable misappropriation and misuse of those materials and records to prop up its half-formed,

14

competing enterprises.  The injunction seeks no more than is necessary to protect Einstein's

intellectual property rights and the privacy rights of its students, and no less than the law and the

Agreement provide.  Accordingly, Einstein respectfully requests that the Court grant it

preliminary injunctive relief in the manner set forth in the form of Order attached hereto.


Respectfully submitted,


May 14, 2002

_____
Howard D. Scher
Francis X. Taney, Jr.
Pennsylvania ID Nos. 03673 and 76590
BUCHANAN INGERSOLL, PC
1835 Market Street, 14th Floor
Philadelphia, PA 19103
Telephone:  (215) 665-6700

Attorneys for Plaintiff

15

## CERTIFICATE OF SERVICE

I, Eliot G. Long hereby certify that on May 14, 2002, I caused to be served a true and correct copy of the foregoing by delivering it to a process server, for prompt service upon the following:

Phillip Matthew Stinson, Esquire
Stinson Law  Associates, P.C.
University Technology Park,
Suite 200
1450 Edgemont Avenue
Chester, PA 19013-3934

_____
Eliot G. Long

16