IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE EINSTEIN ACADEMY CHARTER SCHOOL, f/k/a THE NATIONAL ORGANIZATION FOR CHILDREN, INC., d/b/a T.E.A.C.H. – THE EINSTEIN ACADEMY CHARTER SCHOOL, <br><br> Plaintiff, <br><br> v. <br><br> TUTORBOTS, INC.; MIRIAM ROTHSCHILD, a/k/a MIMI MANDEL, and HOWARD MANDEL, <br><br> Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : CIVIL ACTION No. 02 cv 2880 <br> : <br> : <br> : <br> : <br> : <br> : |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
FOR AN ORDER REQUIRING DEFENDANTS AND LEARNING BY GRACE, INC.
TO SHOW CAUSE WHY THEY SHOULD NOT BE HELD IN CONTEMPT**

**I.      INTRODUCTION**

On May 17, 2002, as part of a consent order entered on The Einstein Academy Charter School's ("Einstein") motion for a preliminary injunction, defendants promised not to copy or publish any data belonging to Einstein and not to make use of Einstein's records as Einstein had accused them of doing. Einstein later learned, however, that defendants have continued to do precisely that. Accordingly, Einstein now moves for an order requiring defendants, as well as Learning By Grace, Inc., an apparently associated third party that aided defendants in their actions, to show cause why they should not be held in contempt of the consent order.

**II.     FACTUAL BACKGROUND**

Einstein, a Pennsylvania non-profit organization that operates a public cyber-charter school, brought this action for trademark infringement, theft of trade secrets and unfair trade practices,

breach of contract and conversion against defendants Tutorbots, Inc., Miriam Rothschild and Howard Mandel.

Defendants, who formerly worked for Einstein as independent contractors, recently opened a rival, private cyber-charter school under the name "Grace Academy." In its Complaint, Einstein alleged that defendants had unlawfully copied sections of Einstein's Web site and re-published them on the Internet as though they belonged to Grace Academy. Einstein also alleged that the defendants had misappropriated and were misusing scholastic records containing the addresses of Einstein's students to send them e-mail and other correspondence urging them to join Grace Academy. Both as part of the relief requested in the Complaint and by separate motion, Einstein sought a preliminary injunction barring defendants from copying its proprietary materials or using Einstein's own confidential student records to solicit its students to switch to Grace Academy.

On May 17, 2002, this Court approved and entered a Consent Order on Plaintiff's Motion for Preliminary Injunction (the "Consent Order"), a true and correct copy of which is attached hereto as Exhibit 1. Paragraph 2 of the Consent Order provides in pertinent part that:

> Defendants shall not copy, publish, or make use of any records or data belonging to Einstein, including without limitation personally identifying student information or parent email addresses and Einstein's course curriculum or parent records, and shall immediately return all copies of such data and information to Einstein.

Ex. 1.[1]

Despite their consent to these provisions, and the fact that the Court entered these provisions as part of a formal Order, defendants have willfully violated the terms of the Consent Order by distributing a brochure promoting Grace Academy that contains materials copied directly from

---

[1] Upon the entry of the Consent Order, the Court entered an Order dated May 17, 2002, denying Einstein's motion for a preliminary injunction as moot and directing the Clerk to mark this case closed. On June 12, 2002, Einstein filed a motion to reinstate the case because the Consent Order disposed only of Einstein's motion for a preliminary injunction and not its other claims for relief. That motion remains pending.

Einstein's Web site. Specifically, as set forth in the supporting affidavit of Naheed Snyder (a true and correct copy of which is attached hereto as Exhibit 2), the Grace Academy brochure prominently features purported "screen shots" of the Grace Academy Web site that are, in fact, verbatim copies of materials created by Einstein and appearing on the Einstein Web site, but with Einstein's identifying marks having been removed in favor of the Grace Academy logo.

For example, the center of the three screen shots featured on the cover page of the Grace Academy brochure (a true and correct copy of which is attached to Mrs. Snyder's affidavit as Exhibit A) contains a "Teacher's Announcement" for March 21, 2002, that begins "Just a quick note of good news: Tim is out of the hospital and is doing better at home!" Ex. 2 at Ex. A. As shown by the first of the Einstein screen shots assembled in Exhibit B to Mrs. Snyder's affidavit, that identical message originally appeared on Einstein's Web site. Ex. 2 at Ex. B. Similarly, the list of American history courses shown on the Grace Academy brochure matches Einstein's published list of courses. *Compare* Ex. 2 at Ex. A p.2, *with* Ex. 2 at Ex. B p.2. Thus, defendants have indisputably violated that part of the Consent Order that forbids them to "copy, publish, or make use of any records or data belonging to Einstein, including without limitation . . . Einstein's course curriculum," as well as that portion of the Consent Order that required defendants to "immediately" return all such copies of those materials to Einstein.

To make matters worse, it appears that defendants have compounded their breach of the Consent Order retaining and using Einstein's own student records and mailing lists to send the brochure to Einstein's students and their parents. Ms. Snyder, who is one of the Einstein parents who received the Grace Academy brochure, has never home-schooled her children, does not belong to any Christian-based organizations, and, to her knowledge, has done nothing other than enroll her

3

child in Einstein Academy to have made her name and address available to defendants. Ex. 2 ¶ 10.

Defendants apparently were aided in their violations of the Consent Order by a third-party entity known as Learning By Grace, Inc ("Learning by Grace"). A notice appearing on the last page of the brochure claims that the material therein was copyrighted by Learning By Grace. *See* Ex. 2 at Ex. A. Although Learning By Grace is not a party to this action, it does appear to be connected to, if not indeed wholly controlled by, the defendants. Records maintained by the Pennsylvania Department of State list the business address of Learning By Grace as 10 Shurs Lane, Philadelphia – the same address as that of defendant Tutorbots, Inc., and the same address listed for Grace Academy. *See* Ex. 3.

On the basis of these facts and evidence, Einstein now moves the Court for an order requiring defendants and Learning By Grace to appear and show cause why they should not be held in contempt for violating multiple provisions of the Consent Order.

## III.   ARGUMENT

As the U.S. Court of Appeals for the Third Circuit has explained, "a consent decree, although negotiated by the parties, is a judicial act. . . . [A] party violating a consent decree may be subject to the powers by which a court protects its judgments, including most notably the power of contempt under 18 U.S.C. § 401 (1976)." *Interdynamics, Inc. v. Firma Wolf*, 653 F.2d 93, 96-97 (3rd Cir. 1981) (citations omitted).

"A plaintiff must prove three elements by clear and convincing evidence to establish that a party is liable for civil contempt: '(1) that a valid order of the court existed; (2) that the defendants had knowledge of the order; and (3) that the defendants violated the order.'" *Roe v. Operation Rescue*, 54 F.3d 133, 137 (3rd Cir. 1994) (citation omitted). Willfulness is not a necessary element

4

of civil contempt, nor is good faith a defense. *Robin Woods, Inc. v. Robin F. Woods*, 28 F.3d 396, 400 (3rd Cir. 1994); *Harley-Davidson, Inc. v. Morris*, 19 F.3d 142, 148-49 (3rd. Cir. 1994). In addition, individuals who are neither parties to a proceeding nor named in the court order at issue may nonetheless be subject to the court's contempt powers if they have "knowledge of a valid court order and abet others in violating it." *Roe*, 54 F.3d at 140 (quoting *Roe v. Operation Rescue*, 919 F.2d 857 (3d Cir. 1990); *Quinter v. Volkswagen of Am.*, 676 F.2d 969, 972 (3rd Cir. 1982)).

Under these principles, defendants and Learning By Grace clearly are subject to sanction for civil contempt here.[2] First, the Consent Order is a valid order of this Court, duly entered on May 17, 2002, and has the same force and effect as any other order or judgment. *See Interdynamics,* 653 F.2d at 96-97. Second, defendants and Learning By Grace were aware of the terms of the Consent Order, because defendants' counsel negotiated, signed, and submitted the Consent Order to the Court for its approval and entry, and copies of the signed Consent Order were subsequently distributed to defendants' counsel.

Finally, defendants and Learning By Grace clearly have violated at least two provisions of the Consent Order and appear to have violated another. As explained above, defendants and Learning By Grace have disseminated a brochure depicting purported Grace Academy screen shots that were copied verbatim from Einstein's Web site. Such dissemination constitute a breach of at least two provisions of the Consent Order, which required defendants and Learning By Grace to

---

[2] A party who violates an order of court may be liable for either civil or criminal contempt, or both, because "a single act of contempt may give rise to both civil and criminal contempt." *Latrobe Steel Co. v. United Steelworkers of Am., AFL-CIO,* 545 F.2d 1336, 1343 (3rd Cir. 1976). The primary difference between civil and criminal contempt is the nature and purpose of the sanctions imposed upon the contemnor. *Id.* The purpose of criminal contempt is to punish the contemnor for past acts of disobedience, and thus enforce the authority of the court's orders. Civil contempt, in contracts, seeks to force the defendant into future compliance with the court's order, and to compensate the plaintiff for the harm caused by the defendant's disobedience. *McDonald's Corp. v. Victory Investments*, 727 F.2d 82, 87 (3rd Cir. 1984). By this motion, Einstein seeks only to impose civil sanctions upon defendants and Learning By Grace, to compel their future compliance with the Consent Order and to recover its losses, including its attorney fees, caused by these parties' violation of that Order.

"immediately return all copies of [Einstein's] data and information to Einstein," except for one copy of Einstein's materials that were to be retained by their counsel, and to refrain from copying, publishing or making use of records or data belonging to Einstein.

This is precisely the kind of violation that the Third Circuit has held will subject a party to contempt. In *Interdynamics*, for example, two manufacturers entered into a consent decree that barred the defendant from manufacturing an automobile window defroster kit that infringed on the plaintiff's patent. *See Interdynamics*, 653 F.2d at 95. After the defendant then began manufacturing a slightly different version of the defroster kit, the plaintiff moved for an order requiring the defendant to show cause why it should not be held in contempt for violating the consent order. *See id.* The district court denied plaintiff's motion, but the Third Circuit, after concluding that the second product infringed on plaintiff's patent in the same manner as the first product, reversed with a direction to the district court to enter a judgment of contempt against the defendant. *See id.* at 99. Thus, defendants' continuing use of Einstein's material here, like the continuing infringement in *Interdynamics*, is a violation of the Consent Order that should be redressed by contempt.

In addition, there is strong evidence to suggest that defendants and Learning By Grace used Einstein's scholastic records to send the Grace Academy brochure to Einstein students and their parents. Such use also violates the Consent Order and subjects defendants and Learning By Grace to contempt.

6

## IV.    CONCLUSION

For the foregoing reasons, Einstein respectfully requests that its motion be granted.

                                                               Respectfully submitted,

                                                               _____
                                                                Howard D. Scher
                                                                Francis X. Taney
                                                                Pa. Nos. 03673 and 76590
                                                               Buchanan Ingersoll, P.C.
                                                               11 Penn Center
                                                               1835 Market Street, 14th Floor
                                                               Philadelphia, PA  19103

                                                               Counsel for Plaintiff
                                                               The Einstein Academy Charter School

Dated:  July 23, 2002

## CERTIFICATE OF SERVICE

I, Eliot G. Long, hereby certify that, on this 23rd day of July, 2002, I caused a true and correct copy of the foregoing document to be served upon the following by facsimile and U.S. first-class mail, postage pre-paid:

>Philip Matthew Stinson, Sr., Esquire
>University Technology Park
>1450 Edgmont Avenue, Suite 200
>Chester, Pennsylvania  19013-3934
>
>Attorney for Defendants

                                                                                 _____

                                                                                 Eliot G. Long